Walter W. Cohen, Consumer Advocate, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

David M. Barasch, Consumer Advocate, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Case No. 553 C.D. 1983, argued September 11, 1984, before President Judge CRUMLISH, JR. and Judges ROGERS, WILLIAMS, JR., CRAIG, MACPHAIL, COLINS and BARRY. Reargued with Case No. 1364 C.D. 1984, April 10, 1985, before President Judge CRUMLISH, JR. and Judges ROGERS, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

100

*Attorneys for Case No. 553 C.D. 1983:*

*Daniel Clearfield,* Assistant Consumer Advocate, with him, *Gerald H. Chakerian,* Assistant Consumer Advocate, *David M. Barasch,* Acting Consumer Advocate and *Walter W. Cohen,* Consumer Advocate, for petitioner.

*Bohdan R. Pankiw,* Assistant Counsel, with him, *Albert W. Johnson, III,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

*Charles E. Thomas*, with him, *Charles E. Thomas, Jr., Patricia Armstrong* and *Thomas T. Niesen, Thomas & Thomas*, and *E. J. Strasburger*, with him, *Dennis S. Shilobod* and *Wayne Emery, McKenna, Messer, Shilobod & Gutnick*, for intervenor, Duquesne Light Company.

*Attorneys for Case No.* 1364 *C.D.* 1984:

*Daniel Clearfield*, Assistant Consumer Advocate, with him, *Craig R. Burgraff* and *David Wersan*, Assistant Consumer Advocates, and *David M. Barasch*, Consumer Advocate, for petitioner.

*Robert H. Young*, with him, *Daniel P. Delaney, James P. Melia*, Assistant Counsel, *Albert W. Johnson, III*, Deputy Chief Counsel, and *Charles F. Hoffman*, Chief Counsel, for respondent.

*David L. Harbaugh*, with him, *Alan L. Reed* and *Thomas P. Gadsden, Morgan, Lewis & Bockius*, and, of Counsel: *James R. Edgerly*, Vice President and General Counsel, and *Stephen L. Feld*, for intervenor, Pennsylvania Power Company.

OPINION BY JUDGE BARRY, June 13, 1985:

553 C.D. 1983

The Office of Consumer Advocate (OCA) appeals a final order of the Pennsylvania Public Utility Commission (PUC) which permitted inclusion in its rate base of the cost of construction of four cancelled nuclear plants by Duquesne Light Company (Duquesne).

In 1967, Duquesne became a member of the Central Area Power Coordination Group (CAP.CO)[1] which

---

[1] The other members of CAPCO are Pennsylvania Power Company (Penn Power), Cleveland Electric Illuminating Company, Ohio Edison and Toledo Edison.

developed a plan to construct seven nuclear power plants. In January, 1980, CAPCO, however, cancelled plans to construct four nuclear plants. At that time Duquesne's share of the expended cost was $34,697,-389.00. In April, 1982, Duquesne requested an annual base rate increase of $155,000,000.00 effective June 29, 1982.

In January, 1983, the PUC issued a final order which granted Duquesne $105,850,000.00 on its rate request and allowed an annual revenue of $3,469,-739.00 representing the amortization for the first year of a ten year period of the costs of $34,697,389.00 for the four cancelled nuclear plants. Thereafter, the OCA filed for reconsideration and modification based on a newly enacted statute added Section 1315 of the Public Utility Code (Code), 66 Pa. C. S. §1315,[2] which allegedly disallowed recovery of these plant cancellation costs in rates.

The PUC denied this petition reasoning that Section 1315 was inapplicable to such costs. It held that Section 1315 prohibits the inclusion of the costs of plants not used and useful to the public in rate bases but does not prohibit the inclusion of reasonable costs of these plants in revenues as an expense.

The seminal issue involves whether costs of cancelled nuclear power plants can be included in Duquesne's rates. The resolution of this question depends upon whether Section 1315 prohibits amortization of the cancellation costs. Act 335, adding Section 1315, states as follows:

## AN ACT

Amending Title 66 (Public Utilities) of the Pennsylvania Consolidated Statutes, providing

---

[2] Act of Assembly No. 335, approved December 30, 1982.

a limitation on the consideration of certain costs in the rate base for electric public utilities.

The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows:

Section 1. Title 66, act of November 25, 1970 (P.L. 707, No. 230), known as the Pennsylvania Consolidated Statutes, is amended by adding a section to read:

§1315. Limitation on consideration of certain costs for electric utilities.

Except for such nonrevenue producing, nonexpense reducing investments as may be reasonably shown to be necessary to improve environmental conditions at existing facilities or improve safety at existing facilities or as may be required to convert facilities to the utilization of coal, the cost of construction or expansion of a facility undertaken by a public utility producing, generating, transmitting, distributing or furnishing electricity shall not be made a part of the rate base nor otherwise included in the rates charged by the electric utility until such time as the facility is used and useful in service to the public. Except as stated in this section, no electric utility property shall be deemed used and useful until it is presently providing actual utility service to the customers.

Section 2. This act shall be applicable to all proceedings pending before the Public Utility Commission and the courts at this time. Nothing contained in this act shall be construed to modify or change existing law with regard to rate making treatment of investment in facilities of fixed utilities other than electric utilities.

Section 3. This act shall take effect immediately.

Our scope of review is limited to a determination of whether constitutional rights have been violated, an error of law committed or whether the findings, determinations or order of the PUC are supported by substantial evidence. *U.S. Steel Corp. v. Pennsylvania Public Utility Commission,* 37 Pa. Commonwealth Ct. 195, 390 A.2d 849 (1978). The interpretation given a statute by the agency charged with its execution and application is entitled to great weight and should be disregarded or overturned only for cogent reasons or if such construction is clearly erroneous. *Chappell v. Pennsylvania Public Utility Commission,* 57 Pa. Commonwealth Ct. 17, 425 A.2d 873 (1981).

The OCA contends that the PUC erred when it construed Section 1315 to allow amortization of the cancellation costs. It asserts that, under this provision, the cost of construction of an electric generating facility cannot be included in the rates charged until it is, by its definition, used and useful, that is, providing actual utility service. It thus maintains that Duquesne cannot amortize cancellation costs since the four plants will never provide service.

By contrast, it is the position of the PUC that, under Section 1315, Duquesne should be permitted to amortize its share of the cancelled plant costs over a ten year period because this provision does not prohibit the amortization of prudently incurred cancelled plant costs in customer rates. The PUC alleges it allowed Duquesne a recovery of its investment in the cancelled plants but that Duquesne received no return on its investment nor any portion of the cancelled plant costs. Section 1315, it asserts, merely codified the long standing practice of disallowing the inclusion of construction work in progress (CWIP) in the rate base.

In *Bell Telephone Co. v. Pennsylvania Public Utility Commission,* 47 Pa. Commonwealth Ct. 614, 408 A.2d 917 (1979), we stated that the Code

> authorizes utilities to seek a just and reasonable return on the fair value of property used and useful in the public service. What constitutes used and useful utility property is committed to the *discretion* of the Commission. If the Commission reasonably finds that a particular class of property is not used or useful in serving the public, it may exclude the value of that property from the *rate base* and thus disallow the utility's return on that property. (Emphasis added.)

47 Pa. Commonwealth Ct. at 629, 408 A.2d at 924. Furthermore, "[i]n the area of adjustments to rate base, the [PUC] has wide discretion." *UGI Corp. v. Pennsylvania Public Utility Commission,* 49 Pa. Commonwealth Ct. 69, 79, 410 A.2d 923, 929 (1980). In our view, the PUC has correctly applied Section 1315 and, therefore, we agree with its interpretation and analysis of this provision.

According to the rules of statutory construction, the title and preamble of a statute may be considered in the construction of that statute. Section 1924 of the Statutory Construction Act, 1 Pa. C. S. §1924. The limiting title and preamble of Act 335, adding Section 1315, described itself as one "providing a limitation on the consideration of costs in the *rate base* for *electric* public utilities." (Emphasis added.) This phrase relates exclusively to a consideration of *rate base* and not a legislative intent to exclude the costs of cancelled facilities from the revenue or expense factors of ratemaking. This interpretation, moreover, may be inferred from the provisions of the Code where "used and useful" relates *only* to rate base inclusions and not at all to expense allowances. For instance, Section

1307 of the Code, 66 Pa. C. S. §1307, provides that a public utility should establish rates which provide a just and reasonable return on the fair value of its property "used and useful" in the public service; and, Section 1310 of the Code, 66 Pa. C. S. §1310, authorizes the PUC to investigate rates which produce a possible return "in excess of a fair return . . . upon property used and useful in its public service." The Code nowhere employs this phrase regarding the allowance of items of expense. Case law also indicates that the "used and useful" concept is uniformly employed in considering only rate base questions. *See, for example, Philadelphia Electric Co. v. Pennsylvania Public Utility Commission*, 61 Pa. Commonwealth Ct. 325, 433 A.2d 620 (1981); *Bell Telephone Co.; Keystone Water Co., White Deer District v. Pennsylvania Public Utility Commission*, 477 Pa. 594, 385 A.2d 946 (1978).

Properly interpreted, the key language upon which OCA relies, that is, "nor otherwise included in the rates charged," serves to prohibit the inclusion of CWIP in rate base and safeguard against alternative ratemaking methods which seek to accomplish the same or a similar result. We believe that when the legislature added Section 1315, it codified the already existing PUC policy regarding the exclusion of CWIP in the rate base. We, in fact, have held that CWIP is not used and useful property and thus not entitled to a return until actually in service. *Bell Telephone Co.*

Act 335, adding Section 1315, was adopted following a controversy which involved the cost of constructing Philadelphia Electric Company's nuclear generating system on the Schuylkill River. It had requested the inclusion of $500,000,000.00 of the construction costs of the plant in rate base and proposed the removal of all restraints associated with the PUC policy of limited inclusion of CWIP in rate base. The PUC,

however, rejected this claim and proposal as a matter of policy and affirmed its statutory authority to permit these costs in rate base. *Pennsylvania Public Utility Commission v. Philadelphia Electric Company*, R-811626, May 21, 1982, 56 Pa. PUC (1982). In March, 1982 the Pennsylvania Senate passed a resolution expressing a viewpoint that the Code did not permit the inclusion of CWIP in rate base.[3] Act 335, adding Section 1315, was adopted on December 30, 1982, effective immediately, and was obviously meant to settle the issue regarding CWIP in accordance with the resolution.

In our view, the words and meaning of Section 1315 are not entirely clear. Under Section 1921(c) of the Statutory Construction Act, where the meaning of a statute is not explicit, the intention of the legislature may be ascertained by considering:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of the same statute.

1 Pa. C. S. §1921(c). The legislature enacted the Act specifically to counter Philadelphia Electric Com-

---

[3] The resolution was implemented by the introduction of Senate Bill No. 1366, Session of 1982.

pany's controversal request to include CWIP in rate base before the facilities actually served the public. By doing so, the legislature endorsed the long-standing PUC policy regarding treatment accorded CWIP rate base claims thereby codifying the exclusion of rate base in the cost of a facility before it has been completed or has begun providing service to the public.

We believe the PUC properly permitted the inclusion of the cost of the cancelled nuclear plants and, therefore, affirm its order.

### 1364 C.D. 1984

The OCA appeals an order of the PUC which permitted inclusion of the costs of four cancelled nuclear units and allowance of land held for future use in rate base by Penn Power. The PUC order also permitted normalization of tax benefits for state income tax purposes.

In July, 1983, Penn Power filed tariff revisions in order to increase annual revenues by $19,890,200.00. This request included additional return revenues resulting from inclusion of $842,074.00 in rate base of land held for future use, the amortization over ten years of Penn Power's $9,569,665 investment in four cancelled nuclear plants, and normalization of tax benefits associated with effects of depreciation in application to state income taxes. On April 11, 1984, the PUC adopted Penn Power's proposals for ratemaking purposes and this appeal followed.

Because we have resolved the issue regarding the amortization of Penn Power's investment in the nuclear plants, we need not further address it.

The OCA asserts that the PUC violated Section 1315 when it permitted an allowance of land held for future use in rate base because it provided a return thereon to Penn Power. This claim, the OCA main-

tains, involved electric utility facilities none of which could be deemed "used and useful" as contemplated by Section 1315. We disagree.

We reiterate that Section 1315 contemplates disallowing the inclusion of CWIP in rate base and further that the Code and decisional law uniformly apply "used and useful" only to rate base questions.

The OCA next contends that normalization of the tax benefits associated with state income taxes violates the "actual taxes paid" doctrine. The case of *Barasch, Consumer Advocate. of Pennsylvania v. Pennsylvania Public Utility Commission and Pennsylvania Power Company,* Pa. , 491 A.2d 94 (1985), supports the OCA and we, therefore, reverse on the normalization issue.

### Order in 553 C.D. 1983

Now, June 13, 1985, the order of the Pennsylvania Public Utility Commission, entered January 28, 1983, and April 18, 1983, at No. R-821945, is affirmed.

### Order in 1364 C.D. 1984

Now, June 13, 1985, the order of the Pennsylvania Public Utility Commission, entered April 11, 1984, at No. R-832409, regarding the inclusion of costs of cancelled nuclear plants and land held for future use in rate base, is affirmed and the order regarding normalization of actual state income tax expenses is reversed.

Judge Palladino dissents.

---

Concurring Opinion by President Judge Crumlish, Jr.:

I agree with the able and articulate reasoning of the majority, but include an additional comment.

If we had concluded that Section 1315 extended beyond rate base and encompassed all components of

rate structure, I would still have held it inapplicable to the costs of these cancelled nuclear plants. This statute is only intended to prevent the inclusion in rates of construction work *in progress*. When construction is cancelled, a fortiori it does not progress. Section 1315's proscriptive effect attaches "*until such time as the facility is used and useful.* . . ." (Emphasis added.) The General Assembly's language unmistakably connotes a concept of delayed recoupment, not of total forfeiture, as would result if this provision barred recovery of costs associated with plants never to be completed.

Serious constitutional problems would be raised by precluding a utility from ever regaining monies prudently invested for the public benefit. Also, as alluded to by the majority, Section 1315 was enacted in response to a specific instance where a utility sought to charge rates for the costs of *ongoing* construction on a facility *scheduled for future completion*.[1] I would therefore construe Section 1315 as a provision concerned solely with construction work in progress.

----

[1] *See* majority opinion, slip op. at 7.

----

DISSENTING OPINION BY JUDGE COLINS:

I must disagree with the conclusion by the majority in that losses incurred by Duquesne as a result of expenditures on now-abandoned nuclear power plants should be borne by the consumer. Section 1315 of the Public Utility Code[1] clearly disallows the inclusion of the costs of construction of a facility in the rate base until it is used and useful, a practice already followed by the Public Utility Commission (PUC). Section 1315 did not merely reiterate an existing PUC prac-

----

[1] 66 Pa. C. S. §1315.

tice, but rather went on to state that these costs shall not be "otherwise included" in the rates charged until the facility is used and useful. Obviously, the legislature intended that the costs of CWIP's should not be included anywhere in the rates charged until the facility is being used.

Section 1921(a) of the Statutory Construction Act[2] states that "[e]very statute shall be construed, if possible, to give effect to all its provisions." Section 1921 (b)[3] directs that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." The interpretation given Section 1315 by the majority ignores a directive in the statute that "the cost of construction . . . of a facility undertaken by a public utility producing, generating, transmitting, distributing or furnishing electricity shall not be made a part of the rate base *nor otherwise included in the rates charged by the electric utility* until such times as the facility is used and useful in service to the public." (Emphasis added.)

The majority has misinterpreted the statute by ignoring the key phrase "nor otherwise included in the rates charged." The entire statute as it stands is not ambiguous. Any costs incurred in constructing a new facility by a public utility furnishing electricity cannot be included anywhere in its rates until that facility is actually providing utility service to its customers. If the legislature merely wished to codify a practice already utilized by the PUC in its rate computation, it would have simply disallowed the inclusion of these costs in the rate base. The legislature clearly intended that the costs of facilities which are not actually providing service should not be borne by consumers any-

---

[2] 1 Pa. C. S. §1921(a).
[3] 1 Pa. C. S. §1921(b).

where in the rates paid until they are producing electricity.

Therefore, the decision of the PUC should be reversed.

Judge MacPhail and Judge Palladino join.