**UNITED SERVICES AUTOMOBILE ASSOCIATION, a Texas Reciprocal Interinsurance Exchange and USAA Casualty Insurance Company, a Texas Stock Insurance Company and USAA Life Insurance Company, a Texas Stock Insurance Company and USAA Annuity And Life Insurance Company, a Texas Stock Insurance Company**

**v.**

**William J. MUIR, III, Acting Insurance Commissioner of the Commonwealth of Pennsylvania.**

**Appeal of UNITED SERVICES AUTOMOBILE ASSOCIATION, USAA Casualty Insurance Company, USAA Life Insurance Company, and USAA Annuity and Life Insurance Company, Appellants.**

**No. 85–5662.**

United States Court of Appeals, Third Circuit.

Argued March 6, 1986.

Decided June 6, 1986.

---

358

Michael L. Browne, Christopher K. Walters, (Argued), J. Thomas Morris, Reed Smith Shaw & McClay, Philadelphia, Pa., Robert B. Hoffman, Reed Smith Shaw & McClay, Harrisburg, Pa., for appellants.

Leroy S. Zimmerman, Atty. Gen., Ellis M. Saull, (Argued), Deputy Atty. Gen., Andrew S. Gordon, Senior Deputy Atty. Gen., Allen C. Warshaw, Executive Deputy Atty. Gen., Office of Atty. Gen., Harrisburg, Pa., for appellee.

Before GIBBONS, BECKER, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal requires us to examine various forms of abstention advanced by the district court in choosing to refrain from exercising jurisdiction. Included is an unsettled question under the abstention doctrine promulgated in *Railroad Commission of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941): whether a claim that federal statutes preempt state law under the supremacy clause raises a substantial constitutional question which permits abstention.

United Services Automobile Association (USAA) and some of its subsidiary insurance companies filed suit against William J. Muir, III, as Acting Insurance Commissioner of the Commonwealth of Pennsylvania, seeking to enjoin the state insurance department from revoking USAA's license to insure persons in Pennsylvania. The insurance department asserts that USAA following its purchase of a Texas bank is in violation of a Pennsylvania statute prohibiting mergers between financial institutions and insurers. USAA argues that such a construction of the state statute is preempted by federal banking statutes that permitted it to purchase the bank and otherwise violates the constitution. The United States District Court for the Middle District of Pennsylvania concluded that abstention applied, and dismissed the suit.[1] We disagree and reverse.

## I.

The relevant facts as stated in USAA's complaint are not disputed in this appeal. USAA is a reciprocal interinsurance exchange[2] organized under the laws of Tex-

as. USAA and three of its wholly owned insurance company subsidiaries, with which it filed this suit, have their principal place of business in San Antonio, Texas. They limit their insurance services primarily to commissioned officers of the United States armed forces and do business nationwide. They provided insurance services in 1983 to more than 40,000 Pennsylvania policy holders who paid more than $35,000,000 in annual policy premiums.

That year, USAA Financial Services Company (then known as USAA Development Company), a wholly owned subsidiary of USAA, applied for and received from the Federal Home Loan Bank Board and the Federal Savings & Loan Insurance Corporation (FSLIC) permission to organize and operate the USAA Federal Savings Bank (the Bank) in San Antonio, Texas. USAA Financial Services also received permission from the FSLIC to serve as a unitary savings and loan holding company. The insurance department does not allege that USAA failed to comply with any requirements of federal law in organizing the Bank. USAA has made an initial investment of more than $20,000,000 through its subsidiary to capitalize the Bank. The subsidiary holding company and the Bank are not parties to this suit. The Bank does not solicit deposits from Pennsylvania residents or do business in Pennsylvania.

In mid-1984, the Pennsylvania insurance department notified USAA that its ownership of a bank violated section 641 of the Pennsylvania Insurance Act of 1921, and that "USAA must, to continue its business in Pennsylvania, divest itself of the Bank, or, failing such divestiture, risk revocation of its license to transact insurance business

---

1. The district court had jurisdiction under 28 U.S.C. § 1331 (1982) (federal questions), 28 U.S.C. § 1332 (1982) (diversity), and 28 U.S.C. § 1337 (1982) (statutes affecting commerce). For diversity purposes, USAA and its subsidiaries are residents of Texas, and Muir is a resident of Pennsylvania. Dismissal following an abstention order is a final judgment reviewable by this court under 28 U.S.C. § 1291 (1982). *Baltimore Bank for Cooperatives v. Farmers Cheese Cooperative*, 583 F.2d 104, 109 (3d Cir.1978).

2. In a reciprocal interinsurance exchange,

 individuals, partnerships, or corporations engaged in a similar line of business undertake to indemnify each other against a certain kind or kinds of losses by means of a mutual exchange of insurance contracts ... whereby each member separately becomes both an insured and an insurer with several liability only.

 2 *Couch on Insurance*, § 18:11 at 614–15 (2d ed. 1984).

in Pennsylvania." The Pennsylvania Insurance Act of 1921, section 641, as amended in 1974, provides in relevant part:

> (b) No lending institution, ... bank holding company, savings and loan holding company [as defined in federal statutes] or any subsidiary or affiliate of the foregoing, or officer or employee thereof, may directly or indirectly, be licensed or admitted as an insurer ... in this State....

> (c) The Insurance Commissioner is authorized to promulgate regulations in order to effectuate the purposes of the section, which are to help maintain the separation between lending institutions and public utilities and the insurance business and to minimize the possibilities of unfair competitive practices by lending institutions ... against insurance companies, agents and brokers.

*Codified at* 40 Pa.Stat.Ann. § 281 (Purdon 1985 Supp.).

The insurance department argued that because USAA Financial Services is a federally regulated savings and loan holding company, as defined by federal statutes and USAA solely owns USAA Financial Services, the latter is its affiliate and USAA is therefore in violation of section 641(b). In reply, USAA asserted that section 641 is ambiguous and can be read not to apply to it. Section 641(c) states that the purpose of section 641 is to help maintain the separation between lending institutions and the insurance business and minimize the possibilities of unfair competitive practices by lending institutions. Under section 641(a)(1),[3] a lending institution means any institution that does banking business in Pennsylvania. By reading parts (a)(1) and (c) of section 641 together, USAA argued that the purpose of the section is limited to preventing financial institutions doing business in *Pennsylvania* from competing or being affiliated with Pennsylvania insurers; as the Bank is

based and does business only in Texas, the section does not apply to USAA.

USAA and its plaintiff subsidiaries filed suit in the district court under 42 U.S.C. § 1983, alleging that the insurance department's proposed reading of section 641 violated the supremacy, equal protection, and due process clauses of the constitution, and seeking declaratory and injunctive relief. One month after USAA filed suit, the insurance department commenced state administrative proceedings for the revocation of USAA's insurance licenses in Pennsylvania and filed in the district court a motion to dismiss the suit on abstention grounds. While the district court considered this motion, USAA filed a motion for summary judgment on preemption grounds. Citing *Pullman, supra, Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the district court concluded that it should abstain from addressing USAA's suit, and dismissed the suit without considering USAA's summary judgment motion. USAA appealed.

On November 22, 1985, this court granted a motion for an injunction preventing the insurance department from revoking USAA's licenses pending resolution of this appeal. The Pennsylvania Insurance Commissioner has heard testimony in the administrative proceedings to revoke USAA's licenses, but, as of oral argument, he had not announced any decision.

## II.

■ Abstention from the exercise of federal jurisdiction is, in all its forms, "the exception, not the rule." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). It is an extraordinary and narrow exception to the district court's duty to adjudicate a contro-

---

**3.** Section 641(a)(1) provides:
 (a) As used in this section [641]:
 (1) "Lending institution" means *any institution* that accepts deposits and lends money *in the Commonwealth of Pennsylvania,* including

banks and savings and loan associations, but excluding insurance companies.
 *Codifed at* 40 Pa.Stat.Ann. § 281(a)(1) (emphasis added).

versy properly before it, justified only in the exceptional circumstances where resort to state proceedings clearly serves an important countervailing interest. *Id.*

█ In reviewing abstention decisions, appellate courts apply the various criteria for abstention articulated by the Supreme Court in much the same way they would apply provisions of a statute. 1A J. Moore, *Federal Practice* ¶ 0.203[1] at 2106 (1985). A district court has little or no discretion to abstain in a case that does not meet traditional abstention requirements. *C–Y Development Co. v. City of Redlands,* 703 F.2d 375, 377 (9th Cir.1985). Within these constraints, determination whether the exceptional circumstances required for abstention exist is left to the district court, and will be set aside on review only if the district court has abused its discretion. *Harman v. Forssenius,* 380 U.S. 528, 534, 85 S.Ct. 1177, 1181, 14 L.Ed.2d 50 (1965); *United States v. City of Pittsburgh,* 757 F.2d 43, 45 (3d Cir.1985). Determinations that are essentially legal, such as deciding whether interpretation of a state law is unsettled, are reviewed de novo on appeal. *D'Iorio v. County of Delaware,* 592 F.2d 681, 686 (3d Cir.1978), *overruled on other grounds, Kershner v. Mazurkiewicz,* 670 F.2d 440 (3d Cir.1982) (in banc). We therefore turn to an analysis of the abstention grounds on which the district court relied.

### III.

█ *Pullman* abstention, as most recently defined by the Supreme Court, instructs "that federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984). USAA advances three principal grounds for not applying *Pullman* abstention in this case: there is no unsettled question of state law; abstention would cause USAA substantial and irreparable economic harm; and its preemption claim

does not constitute a substantial federal constitutional question.

### A.

█ For *Pullman* to apply, the state statute must be "obviously susceptible of a limiting construction" and "a bare, though unlikely, possibility that state courts *might* render adjudication of the federal question unnecessary" is insufficient. *Hawaii Housing,* 467 U.S. at 237, 104 S.Ct. at 2327 (emphasis in original). A statute is unsettled for Pullman purposes when two of its provisions are contradictory. *Georgevich v. Strauss,* 772 F.2d 1078, 1090–91 (3d Cir. 1985) (in banc), *cert. denied,* —— U.S. ——, 106 S.Ct. 1229, 89 L.Ed.2d 339 (1986). In seeking *Pullman* abstention, the insurance department has argued that the provisions of section 641 are ambiguous and contradictory, and that with no state court decisions interpreting the section, its meaning is unsettled. In reply, USAA contends that the insurance department's interpretation of the laws it is charged with enforcing and its actions implementing that interpretation renders the statute unambiguous.

█ The Supreme Court has held that *Pullman* abstention is not appropriate if an otherwise ambiguous statute has been authoritatively construed by the state courts, *see e.g., Kusper v. Pontikes,* 414 U.S. 51, 55–56, 94 S.Ct. 303, 306–07, 38 L.Ed.2d 260 (1973), but it has not held that an *administrative* interpretation will suffice as an authoritative reading of state law. Although one court has suggested that an administrative interpretation of a statute that creates a constitutional problem eliminates the statute's ambiguity, the challenged statute in that case was clear on its face and not susceptible of any other construction. *National City Lines, Inc. v. LLC Corp.,* 687 F.2d 1122, 1126 (8th Cir. 1982). Indeed, an administrative interpretation that would moot the constitutional issue raised by another reading of an ambiguous statute fortifies the claim for abstention. *See, e.g., Bellotti v. Baird,* 428 U.S. 132, 148, 96 S.Ct. 2857, 2866, 49

L.Ed.2d 844 (1976); *Georgevich*, 772 F.2d at 1090–91.

■■■ Generally, an administrative interpretation of a facially ambiguous state statute will not remove the ambiguity, for *Pullman* purposes. *See Anderson v. Babb*, 632 F.2d 300, 306 (4th Cir.1980). In keeping with statutorily imposed maxims for construing legislative intent, Pennsylvania courts ordinarily defer to administrative interpretations of statutes. *See* 1 Pa. Cons.Stat.Ann. § 1921(c)(8) (Purdon 1985 Supp.). The interpretation given a statute by the agency charged with its execution and application "is entitled to great weight and should be disregarded or overturned only for cogent reasons or if such construction is clearly erroneous." *Cohen v. Pennsylvania Public Utility Commission*, 90 Pa.Cmwlth. 98, 494 A.2d 58, 61 (1985); *see Wiley House v. Scanlon*, 502 Pa. 228, 465 A.2d 995, 999 (1983) (administrative interpretation of a regulation followed unless it is plainly erroneous or inconsistent with the authorizing statute). Although the insurance department's interpretation of section 641 is not clearly erroneous, USAA's cogent alternative interpretation that the statute does not apply to lending institutions that do not do business in Pennsylvania might well be adopted by the state courts. Thus, despite the deference Pennsylvania courts pay administrative interpretations, we cannot say that they would accept the insurance department's interpretation of section 641 as a definitive statement of Pennsylvania law. The state law is therefore unsettled for *Pullman* purposes.

### B.

USAA also argues that the potential damage that its business would suffer during state administrative and court proceedings outweighs any important countervailing interests of Pennsylvania in abstention. The Supreme Court has held that a district court was fully justified in not abstaining when the constitutionality of a narrow and specific—though ambiguous—state statute was at issue, and any delay in settling the issue would result in substantial economic losses. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 140 & n. 3, 90 S.Ct. 844, 846 & n. 3, 25 L.Ed.2d 174 (1970) (allegedly unconstitutional state regulation threatened loss of $700,000 fruit crop). This court observed that undue delay and the increased cost of state litigation made abstention unnecessary when the federal court in resolving the constitutional issue "would not upset sensitive state programs" and the issue was neither novel nor difficult. *McKnight v. Southeastern Pennsylvania Transportation Authority*, 583 F.2d 1229, 1241 (3d Cir.1978) (narrow due process rights of certain state employees facing dismissal). The court, however, did not find that the district court abused its discretion by abstaining. *Id.* at 1242.

The insurance department has indicated a willingness to expedite consideration of USAA's claims in state procedures, and to agree to a stay of execution in the event of an administrative decision adverse to USAA until judicial proceedings were completed. USAA explains plausibly, however, how a state administrative order to revoke its insurance license, even if stayed, would in itself hurt its reputation generally and impair its marketing of insurance, even in other states, regardless of the time factor in litigating. It is uncontested that USAA has an excellent nationwide reputation as an insurer and is financially sound. The threat of a license revocation, a harsh sanction, may suggest in the marketplace fraudulent or illegal activity or financial instability. It could be difficult or perhaps impossible for USAA to explain to consumers and to the insurance industry that the license revocation proceedings in Pennsylvania do not represent such a sanction. The threat of revocation might alarm an unknown number of USAA's more than 40,000 Pennsylvania policyholders into cancelling their insurance. Nationwide, a revocation order even if stayed, would prevent USAA from continuing unqualifiedly to represent that its insurance contracts are available in all 50 states. Because USAA limits its policies primarily to commissioned

officers of the United States armed forces, persons who move frequently in the service of their country, the inability to offer insurance coverage in every state may well be a major blow.

■ Weighing the legal issues and the devastating economic consequences a license revocation would impose upon USAA on the one hand and the vague claim of risks to the state from a Texas bank not doing business in Pennsylvania on the other hand, we conclude that the district court erred by holding that state appeal and supersedeas procedures adequately protected USAA's interests. *See Professional Plan Examiners of New Jersey v. Lefante,* 750 F.2d 282, 290–91 (3d Cir.1984).

### C.

Alternatively, USAA asserts that its claim that federal statutes preempt contrary state insurance laws does not pose the substantial federal constitutional claim required for *Pullman* abstention. *Hawaii Housing,* 467 U.S. at 236, 104 S.Ct. at 2327. The Ninth Circuit supports this claim for it has held that *Pullman* abstention is inappropriate for preemption questions grounded in the supremacy clause. *Knudsen Corp. v. Nevada State Dairy Commission,* 676 F.2d 374, 377 (9th Cir.1982). "Although preemption has its doctrinal base in the Constitution, the question is largely one of determining the compatibility of a state and a federal statutory scheme. No constitutional issues of substance are presented." *Id.* The Tenth Circuit recently reached the same conclusion, stating in strong dictum that "[t]he Supreme Court does not appear to view federal preemption questions based only on the Supremacy Clause as the type of constitutional issues that the *Pullman* doctrine counsels courts to avoid." *Federal Home Loan Bank Board v. Empie,* 778 F.2d 1447, 1451 n. 4 (10th Cir.1985); *see International Longshoremen's Association, AFL–CIO v. Waterfront Commission of New York Harbor,* 495 F.Supp. 1101, 1113–14 & nn. 15–18 (S.D.N.Y.1980), *modified in other part,* 642 F.2d 666 (2d Cir.), *cert. denied,* 454 U.S. 966, 102 S.Ct. 509, 70 L.Ed.2d 383 (1981). These recent cases appear to reflect a growing trend.

This court recently has also suggested in dicta that preemption questions are not appropriate for *Pullman* abstention. In reversing a district court abstention decision, we stated that "[i]t would be inconsistent with our paramount duty to interpret and protect federal law to invoke *Pullman* abstention in this preemption case." *Kennecott Corp. v. Smith,* 637 F.2d 181, 185 (3d Cir.1980). Supremacy clause claims essentially involve federal policy and "the federal courts are particularly appropriate bodies for the application of preemption principles." *Id.* (quoting *Hagans v. Lavine,* 415 U.S. 528, 550, 94 S.Ct. 1372, 1386, 39 L.Ed.2d 577 (1974)). Because the questioned state statute in *Kennecott* unambiguously conflicted with the federal statute, there was no unsettled state law question requiring *Pullman* abstention. 637 F.2d at 185.

The Supreme Court has held that "the basic question involved in [preemption claims under the supremacy clause] is never one of interpretation of the Federal Constitution but inevitably one of comparing two statutes," *Swift & Co. v. Wickham,* 382 U.S. 111, 120, 86 S.Ct. 258, 263, 15 L.Ed.2d 194 (1965), and where a case involves a nonconstitutional federal issue, the necessity for deciding which depends on the decision of an underlying state law, the federal courts, when necessary, decide both issues. *Propper v. Clark,* 337 U.S. 472, 490, 69 S.Ct. 1333, 1343, 93 L.Ed. 1480 (1949). The holdings of *Swift* and *Propper,* read together, suggest that a federal court should not abstain under *Pullman* from interpeting a state law that might be preempted by a federal law, because preemption problems are resolved through a nonconstitutional process of statutory construction. *See* 17 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4242 at 454–55 (1978) (*Pullman* abstention inappropriate in a supremacy clause case); *cf.* 1A J. Moore, *Federal Practice* § 0.203[2] at 2141 (1985) (where clear con-

flict between federal and state statutes, no abstention appropriate).

 Because USAA had pled other constitutional violations in its complaint, the district court declined to consider whether its preemption argument, taken alone, justified preemption. USAA's preemption claim was the sole basis for its motion for summary judgment, however, and is easily separable from its other claims should USAA choose to pursue them. Accordingly, we hold that preemption claims under the supremacy clause are not substantial federal constitutional issues for which *Pullman* abstention might be appropriate.[4] Thus, the district court erred in deciding that the preemption claim also afforded a basis for abstention on *Pullman* grounds.

### IV.

 Under *Burford*, abstention is appropriate "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River*, 424 U.S. at 814, 96 S.Ct. at 1244. If the exercise of federal review would be disruptive of state efforts to establish a coherent policy, and the policy concerns complicated local matters, abstention may be justified. *Id.* Generally, *Burford* abstention is justified where a complex regulatory scheme is administered by a specialized state tribunal having exclusive jurisdiction. *See, Allegheny Airlines, Inc. v. Pennsylvania Public Utility Commission*, 465 F.2d 237, 241–45 (3d Cir.1972), *cert. denied*, 410 U.S. 943, 93 S.Ct. 1367, 35 L.Ed.2d 609 (1973); *see generally*, 1A J. Moore, *supra* ¶ 0.203[2] at 2140–41 (collecting cases).

The district court in the present case found that *Burford* abstention was appropriate because the McCarran-Ferguson Act gave the states exclusive control over the regulation of insurance, 15 U.S.C. § 1012

(1982), and because section 641 is part of a complex regulatory scheme governing insurance. It cited *Levy v. Lewis*, 635 F.2d 960 (2d Cir.1980), which held that abstention was proper to allow a state regulatory body to settle claims against a liquidating insurer. The *Levy* court found it "highly significant that the state scheme has been adopted pursuant to congressional authorization" under McCarran-Ferguson. 635 F.2d at 963.

 The Supreme Court has established a three-part test for determining whether state regulation is part of the business of insurance, 15 U.S.C. § 1012(a) & (b), reserved to the states by McCarran-Ferguson:

> [F]irst, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry.

*Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982). "None of these criteria is necesarily determinative in itself." *Id.* The state regulations implicated in *Levy* concerned both the future coverage of policyholders and their relationship with a defunct insurer, and so were authorized under McCarran-Ferguson. The purpose of section 641, as stated in its part (c), is to prevent competition between insurers and Pennsylvania financial institutions. Unlike the regulations in *Levy*, the section is not concerned with transferring or spreading the policyholder's risk; affiliation between insurers and banks has no integral connection to the relationship between the insured and insurer; and banks are not entities within the insurance industry. Regulations such as section 641 have no part in the business of insurance under McCarran-Ferguson.

*Younger. Kentucky West Virginia Gas Co. v. Pennsylvania Public Utility Co.*, 791 F.2d 1111, 1116–17, 1117–18 (3d Cir. 1986).

---

**4.** We note that a panel of this court has very recently held on other grounds that preemption questions are often not suitable for abstention under the doctrines announced in *Burford* and

■ The district court also thought *Burford* abstention was appropriate because section 641 is part of an "extensive and complicated ... state regulatory scheme." The interpretation of section 641 in this case does not require consideration of any other Pennsylvania statute and the relevant facts are simple and undisputed; no complicated regulatory scheme is involved. The insurance department has not suggested any peculiar local conditions or special expertise required to interpret the statute. The state proceeding merely involves reading and construing a statute, a task for which courts are best equipped, and not administrative factual determinations, such as are involved in the setting of a proper utility rate. The district court erred in applying *Burford* to this case.

### V.

■ Under *Younger*, "interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state *judicial* proceedings that concern important state interests." *Hawaii Housing*, 467 U.S. at 237–38, 104 S.Ct. at 2327–28 (emphasis added). *Younger* abstention is required only when the state court proceedings are initiated prior to any proceedings on the substance of the merits in federal court. *Id.* at 238, 104 S.Ct. at 2328. USAA argues that *Younger* abstention was inappropriate here because state proceedings did not commence until sometime after the federal suit was filed, and because these proceedings were administrative and could not address constitutional arguments.

■ The commencement of administrative proceedings after the federal suit was filed, even with the intention of removing federal jurisdiction by abstention, does not preclude the application of *Younger*. So long as "the federal litigation was in an embryonic stage and no contested matter had been decided," the district court may abstain under *Younger*. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 929, 95 S.Ct. 2561, 2566, 45 L.Ed.2d 648 (1975). In the present case, the district court had taken no action on the substance of USAA's claim when administrative proceedings commenced.

This court has held that "where federal intervention into state administrative proceedings would be substantial and disruptive, and *where the proceedings are adequate to vindicate federal claims* and reflect strong and compelling state interests, the district court, pursuant to *Younger*, should abstain." *Williams v. Red Bank Board of Education*, 662 F.2d 1008, 1017 (3d Cir.1981) (emphasis added). The Supreme Court, however, held in *Hawaii Housing* that administrative proceedings that are not part of, and are not themselves, judicial proceedings, do not trigger *Younger* abstention. 467 U.S. at 238, 104 S.Ct. at 2328. In *Hawaii Housing* an administrative arbitration proceeding, by statute, was separate from any subsequent judicial condemnation proceeding. In the present case, where an administrative decision to revoke USAA's insurance license could be appealed through the Pennsylvania courts, it is more difficult to determine whether the administrative proceeding is part of the state's judicial process.

■ USAA's federal claims are of constitutional dimension. As this court stated in *Red Bank*, administrative proceedings suffice for *Younger* purposes only when they "are adequate to vindicate federal claims." The Supreme Court has held that administrative proceedings that are forbidden by state law from considering federal constitutional claims will not invoke *Younger* because there is no "adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). We believe a state administrative proceeding is part of its judicial process, for *Younger* purposes, only if it provides an adequate opportunity to raise constitutional challenges.

■ It appears to be settled law in Pennsylvania that an administrative agency may not determine the constitutionality

of the statutes it applies. *Borough of Green Tree v. Board,* 459 Pa. 268, 328 A.2d 819, 825 (1974); *Delaware Valley v. Commissioner,* 36 Pa.Cmwlth. 615, 389 A.2d 234, 237 (1978). The insurance department in its internal documents has acknowledged this limitation. Because the insurance department in its administrative proceedings cannot consider USAA's constitutional arguments, its administrative proceedings are not part of Pennsylvania's judicial process and the district court erred in abstaining under *Younger.*

## VI.

We conclude that the district court erred in abstaining from considering USAA's preemption claim and dismissing its suit. The order of dismissal will be reversed and the case remanded to the district court for proceedings consistent with this opinion.

BECKER, Circuit Judge, concurring.

I concur in the judgment and in all but Part III.B of the majority's opinion. I write separately to explain my disagreement with one ground for the majority's holding that *Pullman* abstention is improper in this case. The majority states that the balance of the interests disfavors abstention because the potential damage to United Services Automobile Association's ("USAA") business during state administrative and court proceedings outweighs the state interests in abstention. I disagree, however, and believe that such a holding may have dangerously broad implications.

There are certainly cases in which the burdens imposed upon a plaintiff by abstention outweigh the interests served by application of the *Pullman* rule and in which the balance of interests therefore counsels against abstention. However, I do not believe that this is such a case. The state administrative and judicial proceedings that USAA would face are no more cumbersome than the state procedures available to any state litigant. The fact that USAA would have to receive an administrative ruling before it could present its case to a state court does not render its situation significantly more harmful than it if could proceed directly to federal court.[1] By permitting USAA to prevail on this argument, the majority creates a precedent that could allow virtually any litigant faced with relatively complex state litigation to avoid the application of the *Pullman* abstention doctrine.

USAA has convinced the majority that ongoing license revocation litigation would drastically damage its reputation and thus impair its marketing of insurance. I am not convinced, however, that the harm that such litigation would impose upon USAA is significantly different from or greater than the harm that important ongoing litigation imposes upon any litigant. For example, if a company were threatened with a large fine or penalty as the result of a state proceeding, the litigation might affect the value of its stock. Yet I do not believe that this predictable side-effect of litigation would justify a denial of *Pullman* abstention, if abstention were otherwise proper. In *Bellotti v. Baird,* 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976), the continuing existence of a statute that governed the type of consent required before an abortion could be performed on a woman under the age of eighteen imposed a substantial burden on individuals to whom it applied. Although the Court acknowledged that "[e]ach day the statute is in effect, irretrievable events, with substantial personal consequences, occur," 428 U.S. at 151, 96 S.Ct. at 2868, it nevertheless held that abstention was proper. I do not believe that the type of harm that abstention would inflict upon USAA in this case is any greater than the type of harm caused to young women during that state litigation ordered in *Bellotti v. Baird.*

---

1. This is especially true because the administrative hearing is over and the administrative decision will apparently be announced soon.

It is significant that, as the majority has pointed out, the insurance department has proposed ways of mitigating the harm that state litigation would impose upon USAA. It "has indicated a willingness to expedite consideration of USAA's claims in state procedures, and to agree to a stay of execution in the event of an administrative decision adverse to USAA until judicial proceedings were completed." Maj.Op. at 362. Such expedition reduces the burden that resort to the state system creates for USAA. *Cf. Bellotti v. Baird, supra,* 428 U.S. at 150–51, 96 S.Ct. at 2868 (procedure for certifying issues directly to the state supreme court reduces relative burden of abstention, so that abstention is appropriate even in case in which the "importance of speed in resolution ... is manifest"). The proposed stay of execution of a license revocation order also distinguishes this case from *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), cited by the majority, in which the plaintiffs were subject to a state enforcement order which would impair their existing business activity.

Because I believe that the harm threatened to USAA is not significantly greater than the harm that state litigation would inflict upon any litigant, I believe that the majority's assessment of the balance of the interests in this case creates an exception that could swallow the abstention rule. Indeed, almost any litigant opposing *Pullman* abstention can make out a case as strong as USAA's. I think that the balance of the interests approach as a basis for avoiding *Pullman* abstention should be reserved for extreme cases, such as *Pike v. Bruce Church, Inc., supra,* 397 U.S. at 139, 90 S.Ct. at 845–46, in which an emergency situation was presented because the company faced an imminent loss of its cantaloupe crop as a result of a state enforcement order, while only "a narrow and spe-

cific application" of a state statute was challenged as unconstitutional.[2]

I do, however, agree with the majority's other ground for holding that this is not a proper case for *Pullman* abstention: *Pullman* abstention should not be employed to avoid a ruling on a claim of federal preemption because such a claim does not call for substantial federal constitutional adjudication. I would base the holding on that ground alone.

**2.** Not only do I find that the harm that abstention would impose upon USAA in this case is not unusually great, but I also find that the countervailing state interest in interpreting its regulation is not unusually small. Unlike the situation in *McKnight v. Southeastern Pennsylvania Transportation Authority,* 583 F.2d 1229,

1241 (3d Cir.1978), in which resolution of the constitutional issue before definitive state interpretation of a statute "would not upset sensitive state programs," federal intervention into the interpretation of Pennsylvania insurance regulations would be quite intrusive.